68 647<br>
f109 407

WHALEY v. WHALEY.

1. **Divorce:** CRUELTY: INSUFFICIENT EVIDENCE: The acts shown by the evidence in this case (see opinion) *held* not to constitute such inhuman treatment as to endanger life, and hence to be no sufficient ground for divorce.

*Appeal from Hamilton Circuit Court.*

THURSDAY, APRIL 22.

ACTION for a divorce on the ground that defendant has been guilty of such inhuman treatment as to endanger the life of plaintiff. Decree for the plaintiff dissolving the bonds of matrimony, and allowing the defendant $200 alimony for counsel fees and expenses. The defendant appeals.

*W. J. Covil*, for appellant.

*Wesley Martin*, for appellee.

SEEVERS, J.—The plaintiff is fifty-two years old and the defendant forty-five. Prior to October, 1880, the defendant was a widow and the plaintiff a widower. They were married in that month, and lived together as husband and wife for about eighteen months. In April, 1882, the defendant commenced an action for a divorce on the ground that the plaintiff had been guilty of such inhuman treatment as to endanger the life of the defendant. To the action the defendant made no defense, and a divorce was granted in October, 1882. In November or December, 1883, they were again married, and lived together as husband and wife until September or October, 1884, when the defendant left the plaintiff, and in January, 1885, this action was commenced. If the evidence of these parties could be fully believed, each has applied epithets to the other which cannot be commended, and, according to the evidence of the plaintiff, the defendant, on more than one occasion, threatened him with personal violence; and yet both profess to be Christians, and one of the complaints made by the plaintiff is that his wife refused to kneel when he was engaged in prayer; and that, on one occasion, when he was so engaged in his bedroom, he testifies that the defendant came unnecessarily into the room and interrupted him. This she denies,—that is to say, she testifies she went into the room for some necessary purpose; but she admits that she declined to kneel when he was engaged in prayer, for the reason that she did not believe in his sincerity.

There is but a single act of personal violence shown in the record, and we are impressed this has been greatly magnified. At the time it occurred the family were seated at the supper table, and the plaintiff remarked to his wife that when she created any indebtedness he desired that she should tell him. She said she had told him she was going to purchase a cheap dress. This he denied, and placed the bill before her. She struck it from the table, and finally she threw it at him. He testifies that either the paper or her hand struck him in the eye. During the controversy, the plaintiff had got up from the table, and he was standing up. At the time the paper was thrown or blow struck the defendant was seated at the table. This fact satisfies us that the act of the defendant was of a petulant character, and that she did not intend to inflict bodily harm. Besides, the paper did not exceed six inches in length, and three inches in width. Conceding that the plaintiff was struck in the eye, there cannot be any well-grounded pretense that the defendant intended to inflict bodily injury. The parties cohabited together after this as before. The defendant admits that she tossed the paper at or towards the plaintiff after he had thrust or laid it before her two or three times, but she denies striking him in the eye with her hand, and she does not know whether the paper struck him or not. The plaintiff is corroborated by his children and relatives, and the defendant by hers. In point of numbers there is not much difference. The position of the parties at the time, and the character of the paper, satisfy us that no bodily harm was done or intended. The burden is on the plaintiff, and the epithets testified to by him and his witnesses are substantially denied by the defendant and her witnesses. Many of the acts of misconduct relied on by the plaintiff are of a trivial character. Upon the whole, we cannot say that the plaintiff's life was endangered. He testifies that he became nervous and restless, but we do not think his health, much less his life, was impaired. We reach this conclusion the more readily, as the plaintiff testifies that he loves

his wife, and would gladly welcome her back to his home if she will do better; and the defendant testifies that she loves her husband, and would willingly live with him if he would reform. Such being the case, these parties should not be divorced unless for much graver reasons than appear in this case. This second matrimonial venture should not be lightly dissolved.

The decree of the circuit court must be reversed.

REVERSED.